## WALLACE et al. v. FORD et al.

### No. 3779-1035.

District Court, N. D. Texas, Dallas Division.

Dec. 22, 1937.

Howard Dailey, of Dallas, Tex., for complainants.

E. G. Moseley, Asst. Dist. Atty., of Dallas, Tex., and Sam Lane, Asst. Atty. Gen., of Texas, for respondents.

ATWELL, District Judge.

Complainants claim that they have an investment of $40,000 in furniture and fixtures, at a prominent point, called the Nite Spot, on Commerce street in the city of Dallas, where they have a permit to sell beer and wine. That their income in such business was about $250 per day prior to the beginning of a "sit-down" procedure by inspectors of the Texas Liquor Control Act, as amended, Vernon's Ann.P.C. art. 666—1 et seq. That since such supervision began, their income is practically nothing, and that expenses largely exceed what they take in. They claim that the constant presence of many inspectors who "insult and intimidate customers" and spy upon what is taking place has resulted in that loss. That their presence is due to orders issued by the Liquor Board and Administrator, who are made respondents.

The respondents, under a rule to show cause why they should not be restrained, pleaded a series of violations and court proceedings, in the state jurisdiction, by and between law enforcement officers and one of the interested parties in the Nite Spot, and at least one injunction case wherein both of the present operators were concerned. They also pleaded that a state court has heretofore enjoined the complainants from violating the Liquor Act and from interfering with inspection by officers operating under the authority of that act. They also suggest that since the complainants are already enjoined from interfering with the inspection by officers operating under the act, that this court has no authority to grant the prayer of the complainants to enjoin such operators, or inspectors from lawful activity.

This question of jurisdiction has attention first. I do not conceive that the

injunction of a state court which restrains the citizen from interfering with the lawful duty of an officer can be so stretched as to include unlawful acts by such officer. As, for instance, an inspector who has a right to go into the premises of a licensee for the purpose of viewing what takes place there, would have no right to either "insult" or "intimidate" any person who is in such place, as a customer. That being the court's view, the motions as to jurisdiction are overruled, temporarily, for the purpose of hearing such testimony as may be offered by the complainants and respondents.

The complainants present oral testimony from six witnesses. The respondents offer four witnesses, together with certain affidavits.

The facts seem to indicate that there has been a more or less constant violation of the liquor laws of Texas at this particular location for a number of months. Complainants, as permittees, are entitled to traffic in wine and beer, but the servants, such as waitresses and bar tenders, functioning, of course, with the approval and, doubtless, by the order of the owner, or owners, served and sold what is called hard liquors, such as whisky and gin. Such sales were carried on by various forms of secrecy and deception. Some of the liquors confiscated were found under the bar, some behind a mirror, and in one or two other places. Sometimes the sales were made from the ladies' rest room by a young woman who was scantily clad. The place seems to merit a lawful inspection by the officers. The testimony does not disclose any "insulting" or "intimidating" of customers, unless, forsooth, such may be drawn by the sensitive patron from the presence of an officer who is seeking to find out what is being served to the customer. The customer who does not believe in the enforcement of the liquor laws and who would like to have a hard liquor with his meals, or, otherwise, probably resents such espionage. Upon at least one occasion the customer expressed his dislike, and probably upon many occasions they expressed their displeasure to the woman cashier as they left the place. As many as three inspectors are present all the time. When the shift is changed, the relieving and the relieved stand and converse for fifteen to twenty minutes, so that every four hours six or more are present. They sit, stand, and walk about in the premises continuously. The business of complain-

ants has been seriously impaired by their activity and presence.

In 1935, the 44th Legislature, Second Called Session, passed the Texas Liquor Control Act. Chapter 467, arts. 1, 2. It covers forty-four pages. Article 666—1 et seq., Vernon's Annotated Penal Code of Texas, Volume 1.

The second section of article 1, Vernon's Ann.P.C. art. 666—2, provides that, "This entire act shall be deemed an exercise of the police power of the State for the protection of the welfare, health, peace, temperance, and safety of the people of the State, and all its provisions shall be liberally construed for the accomplishment of that purpose."

Section 5 of the article, as amended, Vernon's Ann.P.C. art. 666—5, creates a Liquor Control Board of three members, and provides that its office shall be in the city of Austin, Tex. This board has the power to appoint an administrator, and the board or administrator may appoint inspectors and other employees to enforce the act.

Section 6, as amended, Vernon's Ann.P. C. art. 666—6, defines the powers and duties of the board, among which are the duty "to supervise and regulate all licensees and permittees and their places of business in all matters affecting the general public." Also, "to investigate and aid in the prosecution of violations of this Act." And, "to cooperate in the prosecution of offenders."

"To require by rule and regulation that any liquor sold in the State shall conform in all respects to the advertised quality of such product." The right to make rules and regulations. To commission such inspectors and representatives as it deems necessary to enforce the provisions of the act. Such inspectors shall have the powers of a peace officer.

The board may refuse a permit if the applicant does not conduct his place in a way that promotes the health, peace, morals, and safety of the people. It may, upon its own motion, cancel a permit, or it must, upon the petition of certain city officials who complain, fix a date for hearing and determine upon the cancellation of a permit.

Copies of papers on file with it, properly certified, are made admissible in evidence.

Section 13, as amended, Vernon's Ann. P.C. art. 666—13, provides that the accept-

ance of a permit or license constitutes an express agreement, and consent on the part of the permittee or the licensee that the board, any of its authorized representatives or agents, or any peace officer shall have at all times the right and privilege of freely entering upon the licensed premises for the purpose of conducting any investigation, or for inspecting said premises, and for the further purpose of performing any duty imposed upon the board, its representatives, or any peace officer by the act, or by any rule and regulation of the board. It defines the alcoholic content of the wine and beer permitted to be sold under the retailers permit. Vernon's Ann.P.C. art. 666—3.

Subsection (4) of section 17a1, as added by Acts 1937, H.B. No. 5, § 22, Vernon's Ann.P.C. art. 666—17a1(4), provides that, "It shall be unlawful for any person operating under a permit under Article I, or Article II of this Act to refuse to allow the Board, or any authorized representative of said Board, or any peace officer upon request to make a full inspection or investigation of the licensed premises."

Section 20a, as added by Acts 1937, H. B. No. 5, § 25, Vernon's Ann.P.C. art. 666—20, provides for searches and seizures. The latter part of that section is as follows: "It is not intended by the provisions of this Section that a search warrant shall be required for any peace officer or any agent, representative, or inspector of the Board to search any premise covered by any permit or license under the provisions of this Act." This provision was added in 1937, and was probably in answer to Greenway v. State, 131 Tex.Cr. R. 620, 101 S.W.2d 569.

Section 30 of the article, Vernon's Ann. P.C. art. 666—30, declares that any illicit beverage, as that term is defined in the act and any illegal equipment for manufacturing any alcoholic beverage is declared to be contraband and the same may be seized without warrant by the board, or any of its agents or employees, and the person in charge thereof may be arrested without warrant.

Article 667—1 et seq., Vernon's Ann. P.C., article 2 of the same act, relates to malt liquors, and with its various stringent regulations and definitions, covers about twenty pages. Section 27 of that article, as amended, Vernon's Ann.P.C. art. 667— 27, makes it the duty of the Attorney General or of the district or county attorneys to bring proceedings to restrain any person from any violation, or threatened violation, or operation under a permit or license, and the district judge shall have authority to issue restraining orders without hearing.

■■ The power of the state to pass so stringent and effective an act may not be questioned, and, in fact, is not questioned in this proceeding. The complainants allege that the manner of its enforcement, in so far as their place of business is concerned, amounts to a taking of their property in violation of amendments 5 and 14 of the national Constitution.

There is something in the American that repels the right of the sovereignty to take up quarters in his home or place of business. It was evidenced by Mr. Jefferson when he penned the Declaration of Independence and complained that the King was quartering soldiers in the homes of free people. One of the amendments to the Constitution of the United States provides that no soldier shall, in time of peace, be quartered in any house without the consent of the owner. Const. Amend. 3. There is something in the soul of the free man that resents any sort of espionage. One's place of business is hardly as sacred as one's home, which has been described as the owner's castle, into which not even the king may enter, unbidden, but it is, nevertheless, safe from unreasonable searches and seizures, and from official surveillance which destroy the very essence of liberty. It is such feelings that have repelled the "sit-down" strike of the civilian, and are no less fretful at the "sit-down" strike by the officer.

■ The waiting, spying officer, ready to pounce upon his prey, is really antagonistic to the constitutional provisions which provide that there shall be certain preliminary steps taken before the citizen can be subjected to prosecution. Those precautions grew out of the people's fear of the administrative and executive departments of government. They desired a real, functioning judicial power, even as they arranged for a fully panoplied legislative body. If the officer is to sit by the citizen, or in the citizen's place of business, and intimidate the timid and scare away the customer, then the citizen is already condemned before he has a trial. He is already branded before he has been pronounced guilty. The very fact that the officer is there is notice to the customer

628

that the proprietor is distrusted. That he is not law-abiding. That he is unfair or fraudulent or crooked. It is a handicap to the free man and is repugnant to our system of government.

 On the other hand, this is a court of equity. It is a national court. While the citizen, as a citizen of the nation, has a right to be protected in his national guarantees, he must seek that protection in the orderly way. If his hands are unclean from the violation of the laws of his state, he may not then come before a conscience impelled chancellor and ask absolution from interference by state officers. He must find his remedy in the courts of the state, and then proceed in the programmed manner, if cast there, to the reviewing national court, which is charged with that duty under our system of government.

One has an inalienable right to carry on his business. That business must be free from all unlawful interference by either citizen or official. If the official interferes with it, there is the remedy of a new official, or of an appeal to a protecting court. The choice of the court is the right of the citizen. If he is deprived of a right that is guaranteed to him by his national government, he may ask that government for protection.

But if he enters a business, which is permitted by police legislation of the state, and is surrounded by state regulations and supervisory right, he cannot be heard to complain to a national court because of an exercise of such supervision by the state officer. This court may not be asked to construe a state statute in such a way as to diagram the amount of inspection that a liquor permittee is compelled to suffer under the state statute before such supervision becomes unlawful. Supervisory right is given unquestionably, how far it may go is a problem that must be solved elsewhere. When the statute says that an inspector may enter and look over the business and scrutinize quality and sales, there is nothing in the statute that says he shall stay five minutes, or thirty minutes, or half of a day, if, forsooth, he thinks it is necessary to stay with such brevity or with such continuity. The statute leaves the length of inspection to the discretion of the inspector. The inspector is presumably acting under orders of his superior, who is either the administrator or the liquor board.

I doubt that this court has the authority to say that an inspection, such as the statute unquestionably authorizes, should be for any definite, given time. Inspections, we must concede, have no virtue unless they are thorough.

The inspector is charged with making thorough inspection, not casual, nor temporary, nor fruitless, but such inspection as will guarantee the compliance of the licensee with the terms of the law. That is the purpose of the inspection.

I would not like to definitely hold that a chancellor has no power to say that an inspection is unreasonable or arbitrary.

We are sure that an officer who acts unlawfully is in the same category as the citizen who also does so, but is entitled to greater censure.

Under all the facts, having in mind the powers conferred by the accepted statute, I cannot find that the activities of the officers are such as complained of in the bill. Temporary injunction is, therefore, denied.